## In Re Anonymous No. 46 D.B. 73

Disciplinary Board Docket no. 46 D.B. 73.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania

JOHNSON, June 24, 1981—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary

Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Pursuant to the provisions of Rule 301(a) of the Pennsylvania Rules of Disciplinary Enforcement, your honorable court by order dated October 14, 1977 transferred the petitioner to the inactive role of attorneys admitted to practice before the Supreme Court and all other courts under its supervisory jurisdiction. Petitioner's transfer to inactive status was predicated upon his involuntary commitment to the [ ] State Hospital for care and treatment under Section 304 of the Mental Health Procedures Act of 1976 by order of the Court of Common Pleas of [ ] County, Pa.

On September 19, 1978, a petition for reinstatement was filed by petitioner. This petition was referred to a hearing committee which in due course filed its report with the Disciplinary Board. On September 24, 1979, the Disciplinary Board filed its report and recommendations with the Supreme Court recommending that the petition for reinstatement be denied. Your honorable court on October 5, 1979 accepted and approved the recommendation of the Disciplinary Board and entered an order denying the petition for reinstatement.

On October 29, 1980, a second petition for reinstatement was filed, together with the required reinstatement questionnaire. The matter was referred to hearing committee [ ] consisting of [ ]. Following a hearing the hearing committee recommending reinstatement and the third member filing a minority report recommending reinstate-

ment with conditions to be imposed. Neither disciplinary counsel nor counsel for petitioner has filed a brief on exceptions to the hearing committee's report.

## II. DISCUSSION

Petitioner has at no time been the subject of disciplinary action. The overall issue involved in any reinstatement proceeding under Rule 301(f) of the Pennsylvania Rules of Disciplinary Enforcement is whether or not there has been a showing by clear and convincing evidence that the formerly admitted attorney's disability has been removed and such person is fit to resume the practice of law. Under Subsection (g) of the Rule, the burden of proof rests with petitioner. It is obvious Subchapter C of the Pennsylvania Rules of Disciplinary Enforcement were promulgated by your honorable court for the protection of the public from any lawyer whose mental or physical condition prevents him from competently representing the interest of his clients. The difficulty in the case before us is the determination of whether or not petitioner's "disability has been removed." The evidence shows that petitioner is suffering from the mental illness of paranoid schizophrenia and will have this disease for the rest of his life. Consequently, if petitioner were required to show that his disease has been removed, he would never be able to be reinstated. Therefore, we conclude that the burden placed upon petitioner to show that his "disability has been removed," is to show to a reasonable degree of certainty that his disease can be controlled by the use of medication and continued counseling to the extent that his reinstatement would not be detrimental to the public.

Petitioner is 50 years of age (date of birth April 19, 1931) and has resided at [   ], Pa., since September, 1978. He was graduated from [   ] College in 1953: attended the University of [   ] Law School for his first year of legal training, the school year ending 1954 and completed his legal training at the [   ] Law School in 1958. His attendance at Law School was interrupted by two years of service in the United States Marine Corps. He was initially admitted to the Bar of the Supreme Court of Pennsylvania June 17, 1964.

During the past 17 years petitioner has been in mental hospitals on approximately seven different occasions. On June 11, 1973, he was involuntarily committed to the [   ] Psychiatric Hospital by the Court of Common Pleas of [   ] County pursuant to Section 406 of the Mental Health Act, being discharged therefrom on August 10, 1973. By order of your honorable court dated August 13, 1973, petitioner was transferred to inactive status pursuant to then Rule 17-20(a) of the Rules of Disciplinary Enforcement. Pursuant to a petition for removal of suspension filed with the Supreme Court on October 10, 1973, an order of the Supreme Court dated September 12, 1973 placed petitioner back on the active role of attorneys. Beginning June 28, 1977 by successive orders of the Court of Common Pleas of [   ] County, petitioner was involuntarily committed to the [   ] State Hospital. It was this commitment which lead to the order of your honorable court dated October 14, 1977 transferring petitioner to the inactive role of attorneys in accordance with the provisions of Rule 301(a) of the Pennsylvania Rules of Disciplinary Enforcement.

Petitioner was discharged from the [   ] State Hospital on April 20, 1978. From May 23, 1978 to

August 15, 1978 he worked as a volunteer legal researcher for [ ] Services, Inc. of [ ], Pa., working without compensation. October 26, 1978, he entered into employment as a library helper at the [ ] Library, which position he continued until March 27, 1980 at which time he was promoted to Library Assistant I of the Department of [ ], Commonwealth of Pennsylvania. He presently is employed in this position.

Since petitioner's discharge from the hospital in April, 1978, he has been receiving medication and periodical outpatient treatment through the Community Mental Health Center of the [ ] Hospital, [ ], Pa.

On September 19, 1978, petitioner filed his first petition for reinstatement. Following the prescribed hearing before a hearing committee, and report of the hearing committee, the board submitted its report to your honorable court dated September 24, 1979, recommending the petition be denied. In that report it was stated "it would seem wiser in view of our responsibility to the public that petitioner reapply in a year's time and that he be ordered to undergo examination by an independent, impartial medical expert. Petitioner filed his second petition for reinstatement on October 29, 1980. The matter was referred to hearing committee [ ] and a hearing on the petition was held on January 20, 1980 at which time petitioner was present and represented by counsel. Following the suggestion of the board contained in its report of September 24, 1979, a stipulation of counsel was entered into between [A] Esq., Assistant Disciplinary Counsel, stipulating that [B], Psychiatrist, [ ], Pa., be appointed by the Disciplinary Board of the Supreme Court of Pennsylvania to do a thorough examination and evaluation of petitioner for

the purpose of determining his present mental condition as related to his ability to practice law. Dr. [B] did examine petitioner and testified as an independent, impartial medical expert at the hearing. Dr. [C], petitioner's attending Psychiatrist, and Dr. [D], a Psychiatrist on the staff of the [ ] State Hospital, had testified on behalf of petitioner at the hearing held on his first petition for reinstatement. The testimony of Drs. [C and D] together with the entire record of the proceedings held on the first petition for reinstatement was received in evidence and considered by the hearing committee with regard to the second petition for reinstatement.

As a part of his psychiatric evaluation of petitioner, Dr. [B] reviewed the entire proceedings on the first petition for reinstatement, as well as the medical records from the [ ] State Hospital and the [ ] Mental Health Center and Hospital, prior to his consultation with petitioner. Dr. [B] expressed the opinion that petitioner had suffered from paranoid schizophrenia, currently in a state of remission, and will remain in remission so long as he continues his medication. He testified that petitioner has managed with regular psychiatric treatment and medication since he last left the hospital almost three years ago. It was his opinion petitioner can function as an attorney and deal with the stress of a law practice so long as he continues his medication and follow-up treatment. It was the expressed opinion of Dr. [B] that petitioner now understands that if he stops taking the prescribed medicine he has a 50 percent chance of having a relapse within six months. If he continues to take the medicine, the risk of a relapse is very remote.

Of especial interest to the board concerning petitioner's understanding of the necessity of continuing his medication and the result that would be

manifested if he discontinued his medication, was the testimony of Dr. [B] beginning at page 77 of the testimony, which was as follows:

"Q. In your view, do you believe that [Petitioner] with his current insight into his problem, will remain on his medications and continue some sort of psychiatric treatment?

A. I don't have any reason at this point to question that since he has remained on the medicine this time for almost three years, and I think he now understands—and I went into considerable detail to explain to him, as I did to you, the consequences of discontinuing the medication.

If he were to discontinue the medicine, the usual period for a relapse is about six months; so that there is a certain degree of lead time before the illness would become manifest again.

If somebody is paying close attention, it is not something which happens overnight. Things begin to deteriorate on a gradual basis. They pay less attention to their appearance; they stop being prompt for appointments; they begin skipping work; they develop physical complaints of one kind or another.

Q. One of the considerations, in fact, I believe, at least in my view, the main consideration of the Disciplinary Board with regard to the last petition for reinstatement was a fear that [Petitioner] would discontinue at some unknown point in the future taking medications.

Do I understand your testimony to be that, in your professional view, there is nothing to indicate that he would stop taking medication at this time?

A. In discussing the matter with him, apparently nobody had ever explained to him before the reasons for the absolute necessity for taking the

medication. I think that now he understands that; that if he stops taking the medicine, he has a 50 percent chance of having a relapse in six months.

If he continues to take the medicine, the risk of a relapse is very remote."

Petitioner testified again at the hearing held on his second petition for reinstatement. His testimony offered at that hearing was compared with the testimony he furnished at the hearing on the first petition for reinstatement. The contrast in the testimony given was remarkable. While at the first hearing he had a tendency to rationalize his problems placing the blame therefor, on exterior sources, at the second hearing he seemed to have grasped a true understanding of his problem and the necessity for keeping it under control. At the instant hearing, he exhibited an understanding of the necessity for his continued treatment, which had not been manifested at the first hearing, when he stated, "I am going to certainly listen to my doctor when he prescribes for me, just as I have been doing for nearly three years now with Dr. [C] and to take the medicine that I am supposed to take and take it religously and listen to his counsel."

At the second hearing petitioner exhibited a comprehension of the entire disciplinary process which he did not seem to possess at the time of the first hearing. This understanding was expressed in the testimony beginning at page 111 which was as follows:

"Q. [Petitioner], do you understand what my concern is at this particular hearing?

A. I think your concern is that—at least this is what I understand it to be—is that I am not put in a position where the risk of injury to some member of the public is created by my practice of law; and that

you have a duty to safeguard the public against attorneys who are not competent to practice law before the Bar of Pennsylvania. I am fully aware of that.

I think in passing, I would like to say that on two occasions before I had any hospitalizations where I was in practice of law privately, I saw to it—I had enough sense even at that point to see to it that any clients or cases that I had pending at the time of my illness were referred to an attorney for proper care.

At no time has anybody that I have ever represented ever complained to the Bar Association about any practice or procedure that I have employed as an attorney in active practice."

The importance of the understanding petitioner has of his condition and the necessity for his continued medication and program if he is to keep it in remission was addressed directly by the chairman of the hearing committee wherein the following questions were put to petitioner and the responses made by petitioner, beginning on page 115 of the testimony:

"Q. CHAIRMAN [   ]: I want to ask you this question. I am going to ask you a direct question if you would give me a direct answer.

THE WITNESS: Yes, sir.

CHAIRMAN [   ]: Do you realize now that you are suffering from a mental illness that is in remission?

THE WITNESS: Yes, sir.

CHAIRMAN [   ]: Are you willing to admit that?

THE WITNESS: Yes, sir.

CHAIRMAN [   ]: And do you also realize that so long as you take this medication, that condition will be stabilized?

THE WITNESS: Yes, sir.

CHAIRMAN [   ]: So you therefore realize the im-

portance of continued treatment and medication?

THE WITNESS: Yes.

CHAIRMAN [ ]: And do you realize that if you forego this, that the chances are you are going to slip back to where you were?

THE WITNESS: Yes, I understand that.

CHAIRMAN [ ]: And you have a firm resolve now, as I understand it, to continue that medication and that treatment?

THE WITNESS: Yes, sir.

THE CHAIRMAN [ ]: And if that were made a condition, you would have no objection to keeping that condition?

THE WITNESS: No."

It is the conclusion of the board, after a review of all the evidence, that petitioner has a mental disease, paranoid schizophrenia which will remain with him throughout his life. That that mental condition is presently in a state of remission and can be reasonably expected to be kept in remission by a program of medication and consultation with his psychiatrist. It is further our conclusion that petitioner sufficiently realizes his condition and the necessity for the prescribed regimen. In view of the lead time of approximately six months, as testified to by Dr. [B], during which time it would become obvious a relapse was occurring, it seems reasonable petitioner should be reinstated and given an opportunity to pursue his profession. We believe the same can be done and the public protected. For the protection of the public it is our opinion a form of probation should be imposed upon reinstatement.

The competency of petitioner to function as an attorney while his mental disease is in a state of remission has not been seriously questioned. The hearing committee concluded as a finding of fact

that although petitioner has not engaged in the actual practice of law since November 29, 1973, he has since his employment in May of 1980 been reading various legal materials and has taken and passed a Civil Service Examination to qualify as a Workers' Compensation Referee. With this finding we concur and it is our opinion petitioner possesses the competency required for reinstatement.

## III. RECOMMENDATION

The board recommends to your honorable court that petitioner's petition for reinstatement be granted and that [Petitioner] be reinstated to the practice of law, with probation, the conditions of probation being: (1) Petitioner is to continue to take any medication currently prescribed or may be in the future prescribed to him for the control of his mental conditions: (2) Petitioner is to undergo treatment under the care of a psychiatrist; (3) Petitioner is to arrange for the treating psychiatrist to submit a report semi-annually concerning the current state of his mental condition; (4) Petitioner is to agree to have the psychiatrist notify the Disciplinary Board of any change in his mental condition; (5) Petitioner is to submit to the Disciplinary Board any change of employment within ten days of such change; and (6) Petitioner is to report to Disciplinary Counsel semi-annually as to taking of medication and any functional problems.

It is further recommended the court direct that the necessary expenses incurred by the board in the investigation and processing of the petition for reinstatement be paid by petitioner. A statement of such expenses is appended to this report.

Mrs. Neuman did not participate in the adjudication.

## ORDER

O'BRIEN, C.J., And now, September 25, 1981, the report and recommendations of the Disciplinary Board dated June 24, 1981, are approved; and it is

Ordered that [Petitioner] be reinstated, with probation, to the Bar of this Commonwealth,

Provided he pays the necessary expenses incurred in the investigation and processing of the petition for reinstatement; and

Further provided he agrees in writing furnished to the Disciplinary Board to abide by the following conditions of probation:

1. That he continue to take any medication currently prescribed for him or which may be prescribed for him in the future for the control of his mental condition;

2. That he undergo treatment under the care of a psychiatrist;

3. That he arrange for his treating psychiatrist to submit reports to the Disciplinary Board semi-annually concerning the current state of his mental condition;

4. That he authorize his treating psychiatrist to immediately notify the Disciplinary Board of any change in his mental condition;

5. That he notify the Disciplinary Board of any change of his employment within ten days of any such change; and

6. That he report to the Office of Disciplinary Counsel semi-annually as to his taking of medication and any functional problems he may be experiencing.

Mr. Justice Roberts and Mr. Justice Kauffman would defer action at this time.